IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., and CARL BARNEY,<br><br>Plaintiffs,<br><br>v.<br><br>RSUI INDEMNITY COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-01329<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Brook C. Wells |

This case presents the question whether Defendant RSUI Indemnity Company (RSUI) has a duty to defend Plaintiffs Center for Excellence in Higher Education (CEHE) and Carl Barney in a pending lawsuit. Plaintiffs were insured under a Directors and Officers Liability Policy (the Policy) provided by RSUI. The coverage period ran from December 31, 2012 through December 31, 2015,[1] during which Plaintiffs were sued in a qui tam action. RSUI, however, denies it has a duty to defend under the terms of the Policy. Before the court are cross motions for summary judgment.[2] Plaintiffs move for partial summary judgment, arguing RSUI wrongfully denied coverage under the Policy. RSUI moves for summary judgment arguing an exclusion in the Policy bars coverage for the Plaintiffs. RSUI also requests summary judgement on Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims. For reasons discussed below, the court grants in part and denies in part Plaintiffs' Motion for

---

[1] Dkt. 2-1 at 6, ¶ 8.

[2] Dkt. 21; dkt. 28.

Partial Summary Judgment, and grants in part and denies in part RSUI's Motion for Summary Judgment.

## I. BACKGROUND

### A. CEHE Merger

Prior to December 31, 2012, Stevens-Henager College, Inc., California College San Diego, Inc., CollegeAmerica Denver, Inc., and CollegeAmerica Arizona, Inc. (the Schools) functioned as separate entities,[3] with Barney managing the Schools collectively.[4] On or about December 31, 2012, however, the Schools merged into an already existing corporate entity known as CEHE,[5] of which Barney is a director.[6] Each of the Schools now function seperately as dba's of CEHE.[7]

### B. The Policy

Before the merger, CEHE and the Schools were insured by carriers other than RSUI.[8] As part of the merger, however, CEHE purchased a Directors and Officers Liability Policy from RSUI.[9] The Policy initially had an effective date of December 31, 2012, and ended on December 31, 2013 (the 12–13 Policy).[10] After the coverage period for the 12–13 Policy ended, CEHE renewed its policy for the periods December 31, 2013 – December 31, 2014 (the 13–14 Policy) and December 31, 2014 – December 31, 2015 (the 14–15 Policy).[11]

---

[3] Dkt. 27 at 10, ¶ 2.

[4] Dkt. 2-1 at 5, ¶ 2.

[5] Dkt. 21 at 3–4, ¶ 4.

[6] Dkt. 2-1 at 5, ¶ 2.

[7] Dkt. 21 at 3–4, ¶ 4.

[8] D Dkt. 27 at 10, ¶ 2.

[9] Dkt. at 3, ¶ 2; dkt. 27 at 7.

[10] Dkt. 28 at 3, ¶ 2.

[11] Dkt. 21 at 3, ¶ 2; dkt 28 at 3, ¶ 2. The parties disagree over whether the various policies issued by RSUI to CEHE constitute different policies or are one single policy; the court need not resolve this issue, however, because it does

CEHE is the named Insured on the Policy.[12] The Policy defines "Insured" as: any "Insured Organization" and/or any "Insured Person."[13] CEHE is an Insured Organization and Barney is an Insured Person under the terms of the Policy.[14] One of the purposes of the Policy is for RSUI to "defend any Claim against the Insured for which coverage applies."[15]

In relevant part, a "Claim" is defined as a "written demand for monetary or non-monetary relief" or a "civil . . . proceeding for monetary or non-monetary relief which is commenced by: Receipt or service of a complaint or similar proceeding."[16] As a condition precedent to coverage under the Policy, CEHE is required to pay a specified Retention amount for "each Claim."[17]

In order to ensure the Policy did not provide coverage for any alleged wrong committed by the Schools pre-merger, "RSUI and CEHE agreed to include [a] Prior Acts Exclusion" in the Policy.[18] As its name suggests, the Prior Acts Exclusion excludes coverage for "any Claim made against any Insured that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged Wrongful Acts which . . . occurred prior to

---

not materially bear on the pending motions. The court will use the singular term Policy for clarity, and will reference the terms of the 13–14 Policy. Each of the policies referenced above contain the same operative terms. *See* dkt. 27 at 10, n. 3.

[12] Dkt. 2-1 at 6, ¶ 11; *see also* dkt. 22-4 at 16.

[13] Dkt. 22-4 at 6.

[14] Dkt. 2-1 at 6, ¶¶ 8, 11. Insured Organization means the "organization named in . . . the Declarations Page." Dkt. 22-8 at 6. Insured Person "means any past, present or future director, officer, trustee, Employee, or any committee member of a duly constituted committee of the Insured Organization." *Id.*

[15] Dkt. 22-8 at 8.

[16] *Id.* at 4–5.

[17] *Id.* at 9. The Retention amount for each Claim is either $500,000 or $1,000,000 depending on the underlying claim. CEHE and RSUI rely on different amounts in their briefing, but the parties do not dispute that the Retention Amount has been satisfied.

[18] Dkt. 27 at 27.

3

December 31, 2012."[19] The Policy defines Wrongful Acts as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by: an Insured Person . . . or [t]he Insured Organization."[20]

**C.    The Brooks Action**[21]

In January 2013, plaintiff relators Katie Brooks and Nannette Wride filed a qui tam action (the Brooks Action) styled *United Sates of America ex rel. Katie Brooks and Nannette Wride v. Stevens-Henager College, Inc.*, Case No. 1:13-cv-00009, in the United States District Court for the District of Idaho.[22]  The relators were former employees of the Schools prior to the merger.  In September 2013, the relators filed a First Amended Complaint naming CEHE, Barney, and the Schools as defendants.[23]  In April 2014, CEHE and Barney were served with the First Amended Complaint.[24]  CEHE provided notice of the lawsuit to RSUI on behalf of itself and Barney.[25]  In a letter dated May 5, 2014, RSUI denied coverage under the Policy's Prior Acts Exclusion.[26]  On this point, RSUI stated:

> [s]ince the relators' allegations arise out of their employment with the Defendants which ended in 2011, the information from the relators was presented to the government in 2011 and 2012, and the First Amended Complaint alleges the wrongful conduct began in 2002; the First Amended Complaint arose out of

---

[19] Dkt. 22-8 at 31.

[20] *Id.* at 7.

[21] The United States filed Complaints in Intervention against Stevens-Henager and CEHE for penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733.  Because the  allegations in those Complaints mirror those of the relators, and will not alter the resolution of the pending motions, the court will focus only on the allegations in the relators' Complaint.  *See* dkts. 27-2 and 27-3.

[22] Dkt. 21 at 4, ¶ 7.

[23] *Id.* at ¶ 8.

[24] *Id.* at ¶ 9.

[25] *Id.* at ¶ 10; dkt. 27 at 8.

[26] Dkt. 22-13 at 4. RSUI also denied coverage based on two other exclusions in the Policy, but does not rely on those provisions as a basis for denial of coverage in its briefing.

wrongful acts which first occurred prior to December 31, 2012. As such, there is no coverage for this Complaint under the Policy.[27]

On May 13, 2014, relators filed a Second Amended Complaint.[28] CEHE notified RSUI of the suit on behalf of itself and Barney,[29] but RSUI again denied coverage under the Prior Acts Exclusion.[30] The Brooks Action was then transferred to the United States District Court for the District of Utah, where relators filed their Third Amended Complaint.[31] After being notified of the Third Amended Complaint, RSUI denied coverage on the same basis as before.[32] On March 30, 2018, Judge Jill Parrish, who is presiding over the Brooks Action, limited the bases on which the relators could proceed on their claims against CEHE and Barney.[33] In response to Judge Parrish's ruling, the relators filed a Fourth Amended Complaint on May 4, 2018.[34] RSUI denied coverage as it pertains to the Fourth Amended Complaint.[35]

The allegations in the Brooks Action, as they now stand, are for penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733. Specifically, the relators claim that CEHE, Barney, and the Schools fraudulently induced the federal government into dispensing federal funds by falsifying Program Participation Agreements (PPA's), G5 Certifications, and Required Management Assertions (RMA's).[36] The relators maintain the Schools and Barney supplied thousands of falsified PPA's, G5 Certifications, and RMA's to the federal government beginning

---

[27] *Id.*

[28] Dkt. 21 at 5, ¶ 12.

[29] *Id.* at ¶ 13

[30] Dkt. 22-14 at 2.

[31] Dkt. 21 at 5, ¶ 14.

[32] *Id.* at ¶ 15.

[33] *Id.* at ¶ 16; dkt. 22-16 at 39.

[34] *Id.* at ¶ 17.

[35] *Id.* at ¶ 19.

[36] Dkt. 22-4 at 7, ¶ 4.

in 2003, and that CEHE continued the practice after the merger until 2014.[37] The relators further maintain that each of the thousands of false claims is "separately actionable under the FCA."[38]

**D.     Procedural History**

In response to RSUI's denial of coverage, Plaintiffs filed a Complaint in Utah state court on August 4, 2017, seeking relief under three cause of action.  On Count One Plaintiffs seek a declaratory judgment that RSUI has a duty to defend Plaintiffs in the Brooks Action; on Count Two Plaintiffs seek relief for breach of contract; and on Count Three Plaintiffs seek relief for breach of the covenant of good faith and fair dealing.[39]  On December 29, 2017, RSUI removed CEHE's action to this court.[40]  Plaintiffs filed their Motion for Summary Judgment on May 31, 2018.[41]  RSUI filed its Motion for Summary Judgment on July 13, 2018.[42]  The Motions have been fully briefed, and the court heard argument on the Motions on December 18, 2018.

## II.     LEGAL STANDARDS

**A.     Motion for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as matter of law."[43]  A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[44]  Under

---

[37] *Id.* at 8, ¶ 6.
[38] *Id.* at 7, ¶ 4.
[39] Dkt. 2-1 at 9–13.
[40] Dkt. 2.
[41] Dkt. 27.
[42] Dkt. 28.
[43] Fed. R. Civ. P. 56(a).
[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

this standard, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[45] "Cross-motions are to be treated separately; the denial of one does not require the grant of another."[46]

## B.     Interpretation of Insurance Contracts

Utah follows the "eight corners" rule to determine whether an insurer's duty to defend is triggered under an insurance policy.[47] Under this rule, the court "examines the language of the policy and compare[s] it to the allegations made in the complaint to ascertain" whether an insurer has a duty to defend.[48] An insurer's duty to defend is triggered when the "insurer ascertains facts giving rise to potential liability under the policy."[49] If it is established that the "insurer has a duty to defend an insured under one claim brought against the insured, the insurer must defend all claims brought at the same time, even if some of the claims are not covered by the policy."[50] If, however, the language found within the eight corners "clearly and unambiguously indicate[s] that a duty to defend . . . does not exist, the analysis is complete."[51] It is the insurance company's burden to "demonstrate that none of the allegations of the underlying claim is

---

[45] *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2008).

[46] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[47] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 18, 266 P.3d 733, 737.

[48] *Id.*

[49] *Id.* at ¶ 8.

[50] *Overthrust Constructors, Inc. v. Home Ins. Co.*, 676 F. Supp. 1086, 1091 (D. Utah 1987). *See also Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1236 (D. Utah 2013).

[51] *Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014) (citation omitted) (applying Utah Law).

7

potentially covered (or that a policy exclusion conclusively applies to exclude all potential for such coverage)."[52]

### III. ANALYSIS

In their Motion for Summary Judgment, Plaintiffs request the court enter judgment declaring:[53] (A) RSUI has a duty to defend against the Brooks Action; and (B) RSUI must pay all legal fees CEHE and Barney have incurred since the inception of the Brooks Action.[54] In its Motion for Summary Judgment, RSUI argues it has no duty to defend because coverage is excluded under the Policy's Prior Acts Exclusion. RSUI further argues that because it has no duty to defend Plaintiffs, it is entitled to summary judgment on Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims. To simplify its analysis, the court focuses primarily on the briefing related to CEHE's Motion for Summary Judgment, as the briefing on RSUI's Motion for Summary Judgement duplicates many of the same arguments. For the reasons articulated more fully below, the court grants in part and denies in part Plaintiffs' Motion for Summary Judgment, and grants in part and denies in part RSUI's Motion for Summary Judgment.

---

[52] *Id.*

[53] Plaintiffs' Motion for Summary Judgment also requests a judgment declaring "the insureds [have] met the retention amount of $500,000." Dkt. 21 at 2. The parties cite different retention amounts in their briefing–CEHE claiming $500,000 and RSUI claiming $1,000,000. Plaintiffs, by affidavit, assert they have met the retention amount whether it be $500,000 or $1,000,000. *See* Dkt. 22-6 at 6–7, ¶ 16 (Declaration of Matthew Gerber) (stating CEHE's expenses in the Underlying Lawsuit "exceeded $1.2 million and CEHE had paid over $1 million of those fees and expenses"). RSUI has not provided any evidence to contradict CEHE's assertion. Accordingly, the court finds in favor of Plaintiffs on this issue.

[54] Dkt. 21 at 2.

## A. RSUI's Duty to Defend the Brooks Action.

RSUI maintains that it has no duty to defend Plaintiffs because the allegations in the Brooks Action fall under the Policy's unambiguous Prior Acts Exclusion.[55] The Prior Acts Exclusion excludes "any Claim made against any Insured that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged Wrongful Acts which . . . occurred prior to December 31, 2012."[56] As noted above, Wrongful Acts include "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by: an Insured Person while acting in his or her capacity as such and on behalf of the Insured Organization . . . or [t]he Insured Organization."[57] Reading these provisions together, the Prior Acts Exclusion unambiguously excludes coverage for all claims based on allegations against an Insured related to conduct prior to December 31, 2012.[58]

RSUI relies on *Bainbridge Mgmt. LP v. Travelers Cas. & Sur. Co. of Am.*[59] for the proposition that it may decline coverage "even where the underlying complaint alleges that the insured engaged in wrongful conduct both before and after the applicable prior acts date."[60] In that case, Bainbridge was an insured under a directors and officers liability insurance policy.[61] The policy contained, among other things, a prior acts exclusion:

---

[55] Dkt. 27 at 17.

[56] Dkt. 22-8 at 31.

[57] *Id.* at 7.

[58] Other courts evaluating the same or similar provisions have determined they are unambiguous and enforceable. *See EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 306 F. Supp. 3d 647, 659 (D. Del. 2018), *appeal docketed*, No. CV 18-2712 (3rd Cir. Aug. 3, 2018) ("The language of the Prior Acts Exclusion unambiguously precludes coverage for claims based on alleged wrongdoing occurring prior to November 3, 2015."); *Gateway Grp. Advantage, Inc. v. McCarthy*, 300 F. Supp. 2d 236, 241 (D. Mass. 2003); *Bainbridge Mgmt. LP v. Travelers Cas. & Sur. Co. of Am.*, No. 2:03 CV 459 JM, 2006 WL 978880, at *3 (N.D. Ind. Apr. 10, 2006) (unpublished).

[59] No. 2:03 CV 459 JM, 2006 WL 978880, at *1 (N.D. Ind. Apr. 10, 2006) (unpublished).

[60] Dkt. 27 at 23.

[61] *Bainbridge*, 2006 WL 978880, at *1.

> This insurance shall not apply to, and the Company [] shall not be liable for Loss including Defense Expenses for, any Claim made against any Insured: [] arising out of or in any way related to any Wrongful Act committed or alleged to have been committed, in whole or in part, prior to October 6, 1998.[62]

After the coverage period for the policy began, Bainbridge was indicted and charged with a scheme to defraud Medicare.[63] Bainbridge later admitted, in a plea agreement, that the scheme to defraud began no later than 1995 and continued until December 2000.[64] After its plea, a civil suit was filed against Bainbridge.[65] Bainbridge notified its insurance company of the suit, but the company denied coverage based on the policy's prior acts exclusion.[66] Bainbridge filed suit against the insurer, arguing that its wrongful acts were covered beginning October 6, 1998.[67] The court disagreed and upheld the insurance company's denial of coverage.[68] The court reasoned that "there is no doubt that the Claim . . . [is] at the very least, 'related to' a Wrongful Act-the scheme to defraud-that was committed in whole or in part prior to October 6,1998."[69] Accordingly, the court held that the "policy provides no independent coverage of Wrongful Acts that occur on or after October 6, 1998, and excludes coverage for Claims, in their entirety, that arise from or are related to any Wrongful Acts that occurred before that date."[70]

---

[62] *Id*. at *3.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at *5.

[69] *Id.* at *4.

[70] *Id.*

RSUI maintains that *Bainbridge* is equally applicable to CEHE and Barney.[71]  The court finds *Bainbridge* persuasive with respect to Barney, but finds it distinguishable as it pertains to CEHE.

**1. RSUI does not have a duty to defend Barney in the Brooks Action.**

The Brooks Action alleges that "Barney personally signed PPA's for Defendant Schools at various times, including the April 2001 PPA for SHC, the May 2000 PPA for CAA, and the January 2004 PPA for CCSD."[72]  The Brooks Action further alleges that Barney continued this practice as the "sole statutory member of CEHE."[73]  Like *Bainbridge*, the Brooks Action asserts allegations of fraudulent activity against Barney–as an Insured–beginning before and continuing after the exclusion date.

Plaintiffs argue the Prior Acts Exclusion does not bar coverage for the Brooks Action, because each allegation of fraudulent activity in the Brooks Action constitutes a separate and distinct Claim under the terms of the Policy.[74]  In other words, each allegation of fraudulent activity that occurred after December 31, 2012, represents a new Claim to which the exclusion does not apply.  Plaintiffs' interpretation fails for two reasons.  First, under Utah law, insurance policies are "subject to the general rules of contract construction,"[75] which require that each provision of a policy be interpreted "in relation to all of the others, with a view toward giving effect to all and ignoring none."[76]  In relevant part, the Policy defines Claim as: a "written demand for monetary or non-monetary relief" or a "civil . . . proceeding for monetary or non-

---

[71] *See* dkt. 27 at 25.

[72] Dkt. 22-4 at 16, ¶ 24.

[73] *Id.* at 13, ¶ 19.

[74] Dkt. 21 at 13–16.

[75] *S.W. Energy Corp. v. Cont'l Ins. Co.*, 1999 UT 23, ¶ 12, 974 P.2d 1239, 1242.

[76] *Rawcliffe v. Anciaux*, 2017 UT 72, ¶ 29, 416 P.3d 362, 373.

11

monetary relief which is commenced by: Receipt or service of a complaint or similar pleading."[77] Relying on the "demand for monetary relief" definition of Claim, Plaintiffs contend that the Complaint in the Brooks Action "seeks monetary damages for the numerous alleged false claims and, therefore, contains numerous 'written demand[s] for monetary or non-monetary relief,' *i.e.*, numerous 'Claims.'"[78] The Brooks Action, however, fits squarely within the second definition of Claim, being a civil proceeding commenced by service of a complaint. Plaintiffs' assertion that the "demand for monetary relief" definition of Claim should apply to a civil legal proceeding, such as the Brooks Action, would leave the "civil proceeding" definition of Claim without effect. Plaintiffs' proposed interpretation of Claim runs afoul of Utah's general rules of contract interpretation, and fails as a matter of law.

Second, under Utah law, the court must not interpret a policy in a manner that would lead to absurd results.[79] Here, Plaintiffs' interpretation would lead to absurd results in light of the Policy's Retention provision.[80] The Retention provision states: the "Insured shall pay with respect to each Claim the applicable Retention amount."[81] The Retention amount is either $500,00 or $1,000,000 dollars depending on the nature of the allegations. As a plain reading of this provision reveals, Plaintiffs' interpretation of Claim would require payment of the applicable Retention amount for every alleged false claim asserted against the insureds–of which there are

---

[77] Dkt. 22-8 at 4–5.

[78] Dkt. 21 at 13–14.

[79] *Burt v. Stringfellow*, 143 P. 234, 236 (Utah 1914). *See also LDS Hosp., a Div. of Intermountain Health Care, Inc. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988) ("A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties.").

[80] *See Ohio Cas. Ins. Co. v. Unigard Ins. Co.*, 2012 UT 1, ¶ 16, 268 P.3d 180, 184 (brackets in original) (recognizing that when a court is tasked with interpreting policy provisions, it must "harmoniz[e] to the extent possible all policy provisions").

[81] Dkt. 22-8 at 9.

12

thousands. Plaintiffs' proposed interpretation of Claim leads to an absurd result, and is untenable.[82]

The court concludes the Prior Acts Exclusion excludes coverage for Barney, because the Brooks Action contains allegations against Barney that arise from or are related to Wrongful Acts that occurred before December 31, 2012.[83]

### 2. RSUI has a duty to defend CEHE in the Brooks Action.

As previously discussed, the Prior Acts Exclusion excludes Claims against an insured relating to Wrongful Acts occurring prior to December 31, 2012.[84] RSUI advances three arguments in favor of barring coverage for CEHE based on the exclusion. First, RSUI contends that any allegations of fraudulent conduct by CEHE after December 31, 2012 "is only a continuation of the Defendant Schools' conduct dating back to at least 2003."[85] RSUI admits, however, that prior to the merger, "CEHE and Defendant Schools were separate entities insured under policies by carriers other than RSUI."[86] Unlike *Bainbridge*, where the same entity conducted the allegedly fraudulent activity both before and after the exclusion date, here the fraudulent activity is alleged to have been carried out by separate entities–the Schools prior to

---

[82] Plaintiffs also argue that "the Prior Acts Exclusion is an Affirmative Defense, which RSUI was [r]equired, but failed to Plead in its Answer." Dkt. 34 at 10. Utah has not addressed the issue of whether coverage exclusions are considered affirmative defenses. The Tenth Circuit, applying Indiana law, noted that a "coverage exclusion is an affirmative defense, proof of which is the insurer's burden." *Dietrich v. Albertsons Inc.*, 57 F.3d 1080 (10th Cir. 1995). The Tenth Circuit has recognized, however, "that an affirmative defense can be raised by a motion for summary judgment." *Johnston v. Davis Sec.*, Inc., 217 F. Supp. 2d 1224, 1227 (D. Utah 2002) (citing *Smith v. Spain*, 133 F.3d 933 (10th Cir. 1998) (unpublished)). Plaintiffs will not be prejudiced by allowing RSUI to raise the Prior Acts Exclusion by its Motion for Summary Judgment because RSUI denied coverage on that basis throughout the Brooks Action. *See* May 5, 2014 letter (dkt. 22-13); January 17, 2017 letter (dkt. 28-7); March 28, 2017 letter (dkt. 28-9); June 15, 2017 letter (dkt. 28-11); and August 24, 2017 letter (dkt. 28-13). Thus, RSUI has not waived its Prior Acts Exclusion argument.

[83] *See Bainbridge*, 2006 WL 978880, at *4.

[84] CEHE is considered an Insured Organization under the Policy.

[85] Dkt. 27 at 25.

[86] *Id.* at 10.

the exclusion date and CEHE after the exclusion date. In its briefing, RSUI does not point to any allegation in the Brooks Action of Wrongful Acts by CEHE occurring prior to the exclusion date. The only allegation the court could find that even discusses CEHE pre-merger states: "CEHE is the corporate successor of SHC, CCSD, CAD, and CAA, and is liable for their violations of the FCA prior to the merger."[87] This allegation does not allege that CEHE committed Wrongful Acts–as defined by the Policy–but only suggests CEHE is now liable for the Wrongful Acts of the Schools which were not insured by RSUI prior to December 31, 2012. At oral argument, RSUI suggested that paragraph 12 of the relators' Complaint implicated CEHE for Wrongful Acts that occurred prior to the exclusion date. Paragraph 12 refers to the pre-merger Schools and CEHE collectively as the "Defendant Schools." Dkt. 22-4 at 11–12, ¶ 12. This argument misses the mark because simply attributing the Wrongful Acts of the Schools to CEHE prior to the exclusion date is insufficient for purposes of exclusion. The Prior Acts Exclusion requires that there be allegations of Wrongful Acts by an Insured that occurring prior to the exclusion date. The Schools are not insureds under the Policy, and the Brooks Action alleges no Wrongful Acts by CEHE prior to the exclusion date. Without specific allegations of Wrongful Acts against CEHE prior to December 31, 2012, the Prior Acts Exclusion does not apply.

Second, RSUI argues the Prior Acts Exclusion bars coverage if the Claim contains any allegations of Wrongful Acts that occurred prior to December 31, 2012–even if the allegations pertain to an uninsured person or entity.[88] This argument fails, however, because it ignores the

---

[87] Dkt. 22-4 at 12, ¶ 13.

[88] *See* dkt. 41.

fact that Wrongful Acts is a defined term under the Policy the plain language of which requires the allegations be against an Insured.[89]

Third, RSUI argues that because the Brooks Action alleges Wrongful Acts against Barney–as an Insured–occurring before the exclusion date, the Prior Acts Exclusion bars coverage for CEHE.[90] This argument fails due to the Policy's Severability of All Exclusions provision (Severability Provision). In relevant part, the Severability Provision states: "The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the Exclusions set forth in Section IV."[91] RSUI maintains the Severability Provision does not apply because the Prior Acts Exclusion is not included in Section IV. On this point, however, the court finds the Severability Provision ambiguous. The Severability Provision is titled Severability of *All* Exclusions, but the language of the provision limits its applicability to only those exclusions in Section IV of the Policy. It is unclear to which exclusions the Severability Provision applies. Under Utah law, in cases of "ambiguity, uncertainty or doubt the terms of the policy will be construed strictly against the company and in favor of the insured."[92] Accordingly, the court will construe the Severability Provision in favor of CEHE, and concludes RSUI may not exclude coverage for CEHE based on the Wrongful Acts of Barney.

---

[89] *See* dkt. 22-8 at 7 (defining Wrongful Acts as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by: an *Insured Person* while acting in his or her capacity as such and on behalf of the Insured Organization . . . or [t]he Insured Organization") (emphasis added).

[90] Dkt. 41.

[91] Dkt. 22-8 at 37.

[92] *Zions First Nat. Bank, N.A. v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 654 (Utah 1988).

**B.    RSUI is Only Required to Pay on CEHE's Losses.**

In their Partial Motion for Summary Judgment, Plaintiffs argue that RSUI must pay all legal fees CEHE and Barney have incurred since the inception of the Brooks Action.[93] In light of the analysis above, the court finds that RSUI is required to pay only on CEHE's Losses.

With respect to RSUI's responsibility to pay on Losses, the Policy states:

> that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period . . . the Insurer will pay on behalf of the Insured Organization all Loss for which the Insured Organization is required or permitted to indemnify the Insured Person.[94]

Included in the Policy's definition of Loss is Defense Expenses, which is defined as "reasonable and necessary legal fees and expenses incurred, with the Insurer's consent, by an Insured in defense of a Claim."[95]

By its terms, the Policy provides coverage for CEHE's Losses. The Brooks Action was made against CEHE during the 13–14 Policy period, and no exclusions asserted by RSUI exclude CEHE from coverage. Accordingly, RSUI must pay the Defense Expenses of CEHE from the Beginning of the Brooks Action. To the extent CEHE is arguing that RSUI has a duty to defend the Schools for Wrongful Acts occurring prior to the merger, the Policy does not provide coverage for the Schools. The Policy provides coverage only for Claims made against an Insured. It is undisputed that the Schools are not, and have never been considered an insured of RSUI, particularly pre-merger. Therefore, coverage under the Policy cannot be extended to cover the Wrongful Acts of the Schools.

---

[93] Dkt. 21 at 2.

[94] Dkt. 22-8 at 4.

[95] *Id.* at 5.

The Policy does not provide coverage for Barney. As an Insured Person, the Policy provides coverage for Barney subject to certain exclusions. If an exclusion applies, RSUI is "not liable to make any payment of Loss in connection with any Claim made against any Insured."[96] Here, the Prior Acts Exclusion operates to exclude coverage for Barney for the entirety of the Brooks Action. Accordingly, RSUI need not pay out on Barney's Loss.

## C. RSUI's Remaining Summary Judgment Requests.

RSUI also moves for Summary Judgment on Plaintiffs' (1) Breach of Contract and (2) Breach of the Covenant of Good Faith and Fair Dealing claims.[97]

### 1. RSUI is Entitled to Summary Judgment on Barney's Breach of Contract Claim.

In their Complaint, Plaintiffs argue RSUI breached its contract by failing to defend the Brooks Action.[98] Under Utah law, an insurer cannot breach an insurance policy where it properly denies coverage under the Policy.[99]

The court has already determined that RSUI's denial of coverage as it pertains to Barney was proper. RSUI is therefore entitled to summary judgment on Barney's breach of contract claim. But because RSUI improperly denied coverage to CEHE, it is not entitled to summary judgement on CEHE's breach of contract claim.

---

[96] *Id.* at 7.

[97] Dkt. 28 at 7.

[98] *See* dkt. 2-1 at 10, ¶ 42.

[99] *See Travelers Prop. Cas. Co. of Am. v. Fed. Recovery Servs., Inc.*, 156 F. Supp. 3d 1330, 1337 (D. Utah 2016) ("Without a duty to defend, Defendants cannot prevail on its breach of contract counterclaim.").

## 2. RSUI is Not Entitled to Summary Judgment on CEHE's Breach of the Covenant of Good Faith and Fair Dealing Claim.

In their Complaint, Plaintiffs allege RSUI breached the implied covenant by wrongfully denying coverage.[100] Under the covenant of good faith and fair dealing "the contracting parties each impliedly promise not to intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the contract, and to comply with the covenant, a party must act consistently with the agreed common purpose and the justified expectations of the other party."[101] An insurer "cannot be held to have breached the implied covenant of good faith if it chooses" to debate an insured's claim that is "fairly debatable."[102] "Therefore, an insurer cannot be held to have breached the covenant of good faith and fair dealing on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was fairly debatable at the time it was denied."[103]

Generally, "[w]hether there has been a breach of good faith and fair dealing is a factual issue, [] inappropriate for decision as a matter of law."[104] "Summary judgment is appropriate only when reasonable minds could not differ in concluding that the party accused of breaching the covenant did not wrongfully exercise its discretionary power or contractual authority for a reason beyond the risks that the other party assumed or for a reason inconsistent with the other party's justified expectations."[105]

---

[100] Dkt. 2-1 at 12, ¶ 56.

[101] *Travelers Prop. Cas. Co. of Am. v. Fed. Recovery Servs., Inc.*, 156 F. Supp. 3d 1330, 1337–38 (D. Utah 2016) (citing *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533 (Utah 2002)).

[102] *Id.* at 1338 (citing *Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 304 (Utah 2012)).

[103] *Id.*

[104] *Id.* at 1339 (citation and internal quotation marks omitted).

[105] *Id.* (citation omitted).

Here, summary judgment is appropriate on Barney's breach of the implied covenant claim. Reasonable minds cannot differ regarding Barney's breach claim because the court has already determined that RSUI properly denied coverage under the plain language of the Policy.[106] Accordingly, RSUI's request for summary judgment on Barney's breach of the implied covenant claim is granted.[107]

CEHE's claim is a different matter. The court has determined that RSUI owes a duty to defend CEHE in the Brooks Action, and as such has improperly denied coverage under the Policy. The question of whether RSUI's denial is fairly debatable is a factual question not suited for "decision as a matter of law."[108] Accordingly, RSUI's request for summary judgment is denied with respect to CEHE's breach of the implied covenant claim.

## IV.   CONCLUSION

For the reasons discussed above, the court grants Plaintiffs' Motion for Summary Judgment as it pertains to RSUI's duty to defend and pay the Losses of CEHE, but denies Plaintiffs' Motion for Summary Judgment as it pertains to RSUI's duty to defend and pay the

---

[106] *Id.* at 1338 ("an insurer cannot be held to have breached the covenant of good faith and fair dealing if the claim was fairly debatable at the time it was denied").

[107] Plaintiffs assert two other bases for breach of the implied covenant, they are: (1) the Policy creates a conflict of interest because "it financially benefits the Insurance Company" to avoid defending the Plaintiffs and (2) RSUI failed to timely respond to Plaintiffs' written requests for coverage. Dkt. 21 at 11, ¶¶ 53–55. These allegations fail for several reasons. As to Plaintiffs' first allegation, the implied covenant cannot be invoked to create "obligations inconsistent with express contractual terms." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10, 266 P.3d 814, 817. Plaintiffs seek to create implied obligations by undermining the terms of the Policy. The implied covenant cannot be invoked for that purpose, and Plaintiffs' first allegation fails for that reason. As to Plaintiffs' second allegation, RSUI's proper denial of coverage forecloses any argument for breach of the implied covenant. Other courts have recognized that when "benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses. Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36, 900 P.2d 619, 639 (1995) (internal citation and quotation marks omitted). Because no benefits are due Barney, he has no claim for breach of the implied covenant. As for CEHE, summary judgment is not appropriate to decide this issue.

[108] *Id.*

Losses of Barney. For the same reasons, the court grants RSUI's Motion for Summary Judgment with respect to its duty to defend and pay the Losses of Barney, and with respect to Barney's breach of contract and breach of implied covenant claims; the court denies RSUI's Motion for Summary Judgment with respect to its duty to defend and pay the Losses of CEHE, and CEHE's breach of contract and breach of the implied covenant claims.

SO ORDERED this 22nd day of March, 2019.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge